1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY BEAU DAVIS,<br><br>                              Petitioner,<br><br>v.<br><br>RAYMOND MADDEN, Warden,<br><br>                              Respondent. | Case No.:  22cv0951-LL-MDD<br><br>**REPORT AND RECOMMENDATION GRANTING RESPONDENT'S MOTION TO DISMISS PETITIONER'S WRIT OF HABEAS CORPUS**<br><br>**[ECF NO. 7]** |

## I.    <u>INTRODUCTION</u>

This habeas petition concerns a sentence modification credit of eight months that occurred 17 years after Petitioner Kelly Beau Davis ("Petitioner" or "Davis"), a state prisoner, was sentenced to an aggregate term of 37 years and four months.  Petitioner's sentencing took place on the ominous date and time of September 11, 2001 at 8:30 a.m.  The terrorist attack interrupted the hearing, and the courthouse was evacuated.  Later that day, a minute order entered reflecting the sentencing details, and the government lodged the Petitioner's sentence in state court.  In 2018, the California Department of Corrections ("CDCR") discovered a mistake that resulted in an eight-month sentence reduction.

On April 25, 2018, a sentence modification hearing occurred.  Petitioner did not know about the hearing, but an appointed counsel, A. Waddle, was present.  Throughout the briefing here, both parties refer to the April 25, 2018 hearing as a resentencing, so the Court does as well.  It is worth noting, however, that the superior court's opinion that denied Davis's state habeas petition referred to the April 25, 2018 event as a "sentence modification hearing." (ECF No. 8-5 at 59).  The court explained that after the April 25, 2018 hearing, a minute order credited Davis's sentence with eight months "*nunc pro tunc* to 9/11/2001." (ECF Nos. 8-3 at 44, 8-5 at 2).  That modification occurred after the court properly reduced Petitioner's sentence enhancement (*i.e.*, personal use of a deadly weapon in a second-degree robbery) from one year to four months.  (*Id.*).

Petitioner filed the current Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254 based on his absence from the April 25, 2018 resentencing and the ineffective assistance of appointed counsel at that hearing.  (ECF No. 1).  He did not appeal the resentencing.

Respondent Raymond Madden now moves to dismiss the Petition as untimely.  (ECF No. 7).  Petitioner, having retained new counsel twice, filed an opposition.  (ECF No. 16).  The motion was referred to U.S. Magistrate Judge Mitchell D. Dembin for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Local Civil Rule HC.1 of the United States District Court for the Southern District of California.

## **Brief Conclusion**

After a thorough review of the papers on file, the facts, and the applicable law, the Court respectfully **RECOMMENDS** that Respondent's Motion to Dismiss be **GRANTED**.  The Court finds that statutory tolling

does not apply, and only portions of Petitioner's proposed equitable tolling are supported.  Notwithstanding those findings, even if the Court were persuaded that a combination of statutory and equitable tolling could apply, Petitioner cannot overcome the untimeliness that results between the conclusion of the state habeas petition on March 30, 2021 and the Petition filed here 15 months later, on June 28, 2022.

## II.   **BACKGROUND**

### A.   **The Conviction**

On July 11, 2001, Davis pled guilty to two counts of first-degree burglary, and one count each of carjacking, kidnapping, first-degree robbery, and second-degree robbery.  (ECF No. 8-4 at 1 [Court of Appeal denial of state habeas petition]; ECF No. 1-9 at 4 [Order including Reporter's Tr. of Plea Hr'g]).  Petitioner admitted he personally used a firearm in the carjacking and kidnapping, and personally used a deadly weapon in the second-degree robbery.  He also admitting having a prior conviction that constituted a serious felony for purposes of a five-year enhancement and a strike for purposes of the Three Strikes law.  (*Id.*).

At the plea hearing, the court asked Davis whether he understood his admission of the prior serious felony conviction would add five years to his prison sentence.  He responded, "Yes, Your Honor."  (*Id.*).  The superior court sentenced Davis to prison on September 11, 2001, for an aggregate term of 37 years and four months, which contained the following components:

> (1) the middle term of five years for the carjacking, doubled to ***10 years*** for the prior strike (Cal. Penal Code §§ 215, subd. (b), 667, subd. (e)(1);
> (2) a consecutive term of one year eight months (one-third the middle term of five years) for the kidnapping, doubled to ***three years four months*** for the prior strike (*Id.* §§ 208, subd. (b), 667, subd. (e)(1), 1170.1, subd. (a));

(3) a consecutive term of one year four months (one-third the middle term of four years) for one first-degree burglary, doubled to **two years eight months** for the prior strike (*Id*. §§ 461, subd. (a), 667, subd. (e)(1), 1170.1, subd. (a));

(4) a consecutive term of one year (one-third the middle term of three years) for the second-degree robbery, doubled to **two years** for the prior strike (*Id*. §§ 213, subd. (a)(2), 667, subd. (e)(1), 1170.1, subd. (a));

(5) a consecutive term of **10 years** for personal firearm use in the carjacking (*Id*. § 12022.53, subds. (a)(5), (b));

(6) a consecutive term of **three years four months** (one-third the 10-year term) for personal firearm use in the kidnapping (*Id*. §§ 12022.53, subds. (a)(3), (b), 1170.1, subd. (a));

(7) a consecutive term of **one year** for personal deadly weapon use in the second-degree robbery (*Id*. § 12022, subd. (b)(1)); and

(8) a consecutive term of **five years** for the prior serious felony conviction (*Id*. § 667, subd. (a)(1)).

(ECF No. 8-4 at 1-2) (emphasis in original).

**B.    The Sentencing Discrepancy, the State Habeas Petition, and Petitioner's Medical Issues**

*The Sentencing Discrepancy*

On January 5, 2018, more than 17 years after Petitioner's sentencing, the CDCR sent a letter to the superior court, which copied Davis, and was received by the court and Davis on January 18, 2018.  The letter alerted the court and Davis to a sentencing error regarding the term imposed for the second-degree robbery conviction (explaining it should be 4 months instead of one year), as well as a discrepancy between the sentencing minutes and the abstract of judgment regarding imposition of the five-year serious felony enhancement.  (ECF No. 8-4 at 2; ECF No. 1-5 at 3 [CDCR letter describing possible discrepancy]).  While the minute order of the 2001 sentencing reflects a "Violation of . . . PC 667(a)," the minutes did not state a specific sentence to five years in prison as related to California Penal Code §

667(a)(1).  (*See* ECF No. 1-3 at 2 [Minute Order]).  The January 2018 correspondence sought clarification as to why the five-year enhancement under Penal Code § 667(a)(1) was reflected on the abstract of judgment, but not on the September 11, 2001 minute order.  (See ECF No. 1-9 at 5; ECF No. 1-5 at 3).

On April 25, 2018, the superior court held a resentencing hearing.  Petitioner was not informed of the hearing, nor did he meet or talk to the appointed counsel who represented him at the hearing.  (ECF No. 1 at 18).  At the hearing, the court corrected the sentencing error and issued a new minute order that (1) reduced the enhancement for personal use of a deadly weapon from one year to four months (one-third the prescribed one-year term), (2) specifically listed a consecutive five-year term for his prior serious felony conviction, and (3) reduced the aggregate term from 37 years and four months to 36 years and eight months.  (ECF No. 8-4 at 2).

The pronouncement of judgment minutes from April 25, 2018 state that Petitioner was not present, and that it was an "UNREPORTED CHAMBER'S CONFERENCE."  (ECF No. 1-6 at 2).  The minutes also state: "COURT RECALLS SENTENCE OF 9/11/2001. THIS MINUTE ORDER IS NUNC PRO TUNC TO 09/11/2001."  (*Id.*).  An amended abstract of judgment was filed May 3, 2018.  (ECF No. 1-9 at 11-12).

On May 9, 2018, Davis received a change of release date from the CDCR explaining there was a "sentence restructure date," but Davis remained unaware that a hearing had occurred with his appointed counsel present.  (ECF Nos. 1 at 8, 1-6 at 3-4 ).  On May 15, 2018, Petitioner requested further explanation about the change in his release date.  (ECF No. 1 at 8).  The CDCR answered him on May 17, 2018, stating there was an amended abstract of judgment and that his sentence term was reduced, but he did not

receive a copy of the amended abstract of judgment at that time.  (*Id.*).

Nothing happened in this matter for the next eight months.  There was no activity from May 17, 2018 through January 13, 2019.

On January 13, 2019, Petitioner made a written request to the CDCR to receive more information about the error in his sentencing.  (ECF No. 1-5 at 2).  The CDCR responded on January 30, 2019, informing Petitioner that an amended abstract of judgment "changed PC 12022(b)(1) from 1 year to 4 months," and that there were "no changes to PC 667(a)(1) for 5 years."  (*Id.*).  The notice to Petitioner attached the original abstract of judgment, the amended abstract of judgment, and the minute order.  (*Id.*).

This was the first time Davis understood that a resentencing hearing took place on April 25, 2018 with counsel present.  (ECF No. 1 at 9; ECF No. 1- 5 at 2).  On March 30, 2019, Petitioner retained Spolin Law, P.C. as counsel to review his file and evaluate his options.  (*Id.*).

### *The State Habeas Petition*

On October 8, 2019, counsel filed a writ of habeas corpus in the Superior Court of San Diego County.  (ECF No. 8-1).  On December 2, 2019, the superior court denied the petition as untimely and because it failed to establish a prima facie case for relief.  (ECF No. 8-2).  Petitioner received notice of the superior court's dismissal of his habeas petition in January 2020.  The state court held that Davis failed to show how his counsel's conduct on April 25, 2018 fell below the standard of care required for an ineffective assistance of counsel claim, or how it prejudiced Petitioner, particularly given the admissions Davis made in his plea colloquy.  (ECF No. 8-2 at 5).  Moreover, because the discrepancy was corrected *nunc pro tunc* to the original minute order, the five-year enhancement under PC 667(a)(1) that Davis received at his original sentencing could not be stricken.  (*Id.*).

On May 28, 2020, Davis filed a state habeas petition in the California Court of Appeal.  (ECF No. 8-3).  On June 3, 2020, the Court of Appeals denied the petition as untimely.  (ECF No. 8-4).  The appellate court said Davis was not diligent because he admitted to learning on January 18, 2018 that he received a copy of the January 5, 2018 letter identifying errors in his sentence.  (*Id.*).  By May 17, 2018, Davis knew that his prison term was reduced and that an amended abstract of judgment existed.  (*Id.*).  Yet, Davis waited until March 2019 to hire an attorney, and October 2019 to seek habeas corpus relief.  (ECF No. 8-4).  The appellate court also found that procedural errors warranted a denial of the petition because Davis had not previously raised his right to be personally present at the April 25, 2018 hearing.  (*Id.* at 4-5).

Next, the appellate court denied the petition on the merits, explaining that Davis did not have the right to be present at the April 25, 2018 hearing because the corrections to his sentence were minor.  (*Id.* at 4).  The petition also failed on its merits because:  (1) the enhancement statute at issue was listed in the original minutes (even though the minutes did not explicitly recite imposition of the corresponding five-year enhancement for the prior serious felony conviction); (2) Davis acknowledged understanding that he would be subject to the five-year enhancement when he pled guilty; and (3) the enhancement was mandatory when Davis was sentenced in 2001.  (*Id.*).  Finally, the appellate court explained that because courts can amend a judgment to correct clerical errors without a party present, Davis had not advanced any plausible grounds for ineffective assistance of counsel.  There was no evidence showing what his attorney did or failed to do.  (*Id.* at 5).

On August 10, 2020, Petitioner filed his final state habeas petition, which the California Supreme Court summarily denied on March 30, 2021.

(ECF Nos. 8-5, 8-8).  Petitioner then retained Emry J. Allen as new counsel on November 1, 2021.  (ECF No. 16 at 22).

*Petitioner's Medical Issues*

Petitioner began to experience serious medical problems on September 10, 2018, which led to two heart surgeries and multiple transfers in and out of various hospitals, within and outside of the prison system.  (ECF No. 1 at 9).  In January 2019, he was admitted to a hospital outside the prison system and diagnosed with a blood infection and a hole in his heart.  (*Id*.).  In February 2019, Petitioner had a heart valve replacement surgery at a hospital outside the prison.  (ECF No. 1 at 10).

Petitioner was transferred among multiple hospital locations from April 2019 through July 2019.  (*Id*.).  On August 26, 2019, he underwent a second heart valve replacement surgery, and continued to be transferred among hospitals and prison facilities for health care issues from December 2019 through January 2020, when he was sent to a prison facility in Los Angeles for high-risk medical patients.  In June 2020 he returned to a regular CDCR facility for a week, and was then moved to a medical prison facility again. (ECF No. 16 at 15 ¶ 30).

**C.   The Federal Habeas Corpus Petition**

On June 28, 2022, more than one year after the March 30, 2021 conclusion of the state habeas petition, the Petitioner filed his federal habeas petition.  (ECF No. 1).  To support his claim for relief, Petitioner states his rights were violated based on (1) a constitutional right to confrontation under the Sixth Amendment, to be present at his own re-sentencing, and (2) his attorney's ineffective assistance of counsel.  (ECF No. 1 at 13-25). Respondent's motion to dismiss followed on October 6, 2022.  (ECF No. 7). Petitioner filed on opposition on January 26, 2023.  (ECF No. 16).

### III.   **LEGAL STANDARD**

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts expressly permits a district court to dismiss a habeas petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court[.]" Rules Governing § 2254 Cases, Rule 4, 28 U.S.C. foll. § 2254; *see also O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990) ("[R]ule 4 of the Rules Governing Section 2254 in the United States District Courts 'explicitly allows a district court to dismiss summarily the petition on the merits when no claim for relief is stated.'"); *Purdy v. Bennett*, 214 F. Supp. 2d 348, 353 (S.D.N.Y. 2002) (applying Rule 12(b)(6) standards to motion to dismiss authorized by court pursuant to Rule 4 of the Rules Governing § 2254 Cases).  The Advisory Committee Notes to Rule 8 also indicate that the court may deny a petition for writ of habeas corpus, either on its own motion under Rule 4, pursuant to the respondent's motion to dismiss, or after an answer to the petition has been filed.

In ruling on a motion to dismiss, the court "must accept factual allegations in the [petition] as true and construe the pleadings in the light most favorable to the non-moving party." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030 (9th Cir. 2008)).  In general, exhibits attached to a pleading are "part of the pleading for all purposes." *Hartmann v. Cal. Dept. of Corr. and Rehab.*, 707 F.3d 1114, 1124 (9th Cir. 2013) (quoting Fed. R. Civ. P. 10(c).

### IV.   **DISCUSSION**

Respondent moves to dismiss the Petition as untimely and argues the Petition is barred by the federal one-year statute of limitations under the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") because no statutory tolling occurred before the limitations period expired, and there is no basis for equitable tolling.  (ECF No. 7-1 at 7-9).  Respondent asserts that because Petitioner did not appeal his April 25, 2018 judgment, the limitations period started to run 60 days later, on June 24, 2018, and expired one year later on June 24, 2019.  Cal. R. Ct. 8.308(a) (appeal required within 60 days after rendition of judgment); *see also* § 2244(d)(1)(A); *Wixom v. Washington*, 264 F.3d 894, 897 (9th Cir. 2001) ("one-year limitations period 'shall run from the latest of - (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.'").  Respondent argues the petition must be dismissed because it was filed three years later, on June 28, 2022.  Respondent maintains that, even if Petitioner is entitled to a later start date for commencement of his statute of limitations, and if equitable tolling could apply, this matter is still untimely because Petitioner retained counsel on March 30, 2019, concluded his state petition on March 30, 2021, but did not file this Petition until June 28, 2022.  (ECF No. 7 at 7-9).

Petitioner counters that he is entitled to statutory and equitable tolling through the time of his filing here based on:  (1) a properly filed state petition; (2) his serious medical condition; (3) the national pandemic; (4) his counsel's faulty calculation of the applicable period of limitations; and (5) the state's misconduct.  (ECF No. 16).  As to both statutory and equitable tolling, Petitioner bears the burden of demonstrating that AEDPA's limitations period was sufficiently tolled.  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (equitable tolling); *Smith v. Duncan*, 297 F.3d 809, 814 (9th Cir. 2002) (as amended) (statutory tolling), *abrogation on other grounds* recognized by *United States v. Davis*, 508 F. App'x 606, 609 (9th Cir. 2013).

### A.   <u>Commencement of the Statute of Limitations</u>

The instant Petition was filed on June 28, 2022 and is subject to AEDPA, which provides a one-year statute of limitations for filing a habeas corpus petition in federal court, unless a petitioner can show that statutory or equitable tolling applies.  *See Pace*, 544 U.S. at 410 (citing 28 U.S.C. § 2244(d)(1)); *see also Jorss v. Gomez*, 311 F.3d 1189, 1192 (9th Cir. 2002) ("A petition can also be timely, even if filed after the one-year period has expired, when statutory or equitable tolling applies.").

This one-year statute of limitations period begins to run on the *latest* of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review (*i.e.*, date of final judgment);

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action (*i.e.*, governmental interference);

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review (*i.e.*, new right made retroactive); or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence (*i.e.*, new factual predicate).

*See* 28 U.S.C. § 2244(d)(1) (emphasis added); *see Pace*, 544 U.S. at 416 n.6.

Petitioner claims that commencement of his statute of limitations could not occur until *at least* January 30, 2019, when he was served with a copy of the amended abstract of judgment.  (ECF No. 16 at 3-4).  According to Petitioner, that is the date on which the factual predicate of his claims could

have been discovered pursuant to § 2244(d)(1)(D) because that it was when he received documentation that specifically disclosed his April 25, 2018 resentencing and his appointed counsel's appearance on his behalf.  (*Id*.).

The "due diligence" clock that commences the statute of limitations under § 2244(d)(1)(D) starts ticking when a person knows or through diligence could discover the vital facts surrounding the factual predicate of the claim, regardless of when their legal significance is actually discovered. *See Ford v. Gonzalez*, 683 F.3d 1230, 1235 (9th Cir. 2012) (citations omitted). Although § 2244(d)(1)(D)'s due diligence requirement is an objective standard, a court considers petitioner's particular circumstances.  *Id*. at 1235-36 (citing *Wood v. Spencer*, 487 F.3d 1, 5 (1st Cir. 2007) (holding that due diligence under § 2244(d)(1)(D) is an objective test); *Schlueter v. Varner*, 384 F.3d 69, 75 (3rd Cir. 2004) (considering petitioner's physical confinement and familial assistance in determining due diligence) (citations omitted)).

The Ninth Circuit applied § 2241(d)(1)(D) to an ineffective assistance of counsel claim in *Hasan v. Galaza*, where the triggering event to a statute of limitations concerned a long-term romantic relationship between a prosecution witness and another person who was accused of juror tampering in Hasan's trial.  *Hasan v. Galaza*, 254 F.3d 1150, 1153 (9th Cir. 2001). Hasan argued on appeal that his limitations period did not commence until years after his trial when he obtained an affidavit from the prosecution witness admitting to the romantic relationship, which the defense had not known, and the prosecution had denied, during Hasan's trial.  *See id*. (remanding for further factual findings about when, with the exercise of due diligence, the petitioner could have learned about the improper romantic relationship involved in his trial).

Applying the tolling provision of § 2244(d)(1)(D), the Ninth Circuit explained that in order "to have the factual predicate for a habeas petition based on ineffective assistance of counsel, a petitioner must have discovered (or with the exercise of due diligence could have discovered) facts suggesting both unreasonable performance and resulting prejudice." *Hasan*, 254 F.3d at 1154. The distinguishing issue in that case was that Hasan could not have discovered any entitlement to a new trial until the witness against him admitted the romantic relationship establishing the prejudice required by *Strickland v. Washington,* 466 U.S. 668, 687-91, 694 (1984) (ineffective assistance claim requires proof counsel's performance was unreasonable, and but for counsel's errors, result would have been different). Whereas here, by May 17, 2018, Petitioner knew that his sentence was recalculated, reduced, and that an amended abstract of judgment entered. He could and should have exercised due diligence at that time.

Petitioner admits to receiving CDCR's written communication about a possible sentencing error on January 18, 2018. (ECF No. 1 at 6-7). By May 17, 2018, he learned that his sentence was restructured and reduced. He argues that such knowledge did not trigger diligence or the start of his statute of limitations because he was not alerted to a resentencing in absentia with an appointed counsel until he saw documents from the resentencing in January 2019. (ECF No. 16 at 3).

Respondent rightly contends that Petitioner could have discovered the factual predicate of his claims through the exercise of due diligence as soon as he "knew something had happened" that moved his release to an earlier date. (*Id*.). Respondent cites *Ford v. Gonzales*, 683 F.3d at 1235 as instructive.

In *Ford*, the Ninth Circuit explained that the prisoner should have known at his jury trial that a prosecution witness against him received a

favorable deal for testifying because Ford was present at his own trial where aspects of the witness's cooperation with the government were openly discussed.  (ECF No. 7-1 at 6).  The factual predicate for Ford's ineffective assistance of counsel claim could have been discovered at the time of the trial had the inmate exercised due diligence.  *Ford*, 683 F.3d at 1236.

Petitioner's attempt to distinguish *Ford v. Gonzalez* from the facts here falls short.  *See* 683 F.3d at 1236.  The *Ford* court found that petitioner could and should have drawn speculative inferences about benefits the adverse witness received in exchange for testifying at the time of his trial.  *Id*.

Similarly, here, Petitioner knew enough about the factual predicate of his claim on May 17, 2018 to trigger his exercise of due diligence and the ticking of his statute of limitations clock under § 2244(d)(1)(D).  (ECF No. 7-1 at 6-7).  Despite knowing a resentencing calculation occurred, for reasons unknown to the Court, and unexplained by Petitioner, he waited until January 13, 2019 to ask for documentation associated with his sentence reduction.  He received that documentation promptly from the CDCR on January 30, 2019.  Petitioner blames the CDCR for not providing documentation to him earlier.  (ECF No. 16 at 3-4).

Nothing CDCR did or failed to do prompted Petitioner to act in January 2019; he simply was not diligent from May 2018 to January 2019.  He offers no reason why he failed to take any action from May 17, 2018 through the onset of his illness September 10, 2018.  Once Petitioner asked CDCR for documentation associated with his resentencing, he promptly discovered more details about the nature of his claim, which he attempts to characterize as the triggering event for this Petition.

The Ninth Circuit has made clear that a petitioner does not need to understand the legal significance of the missing facts before the statute of

limitations clock starts ticking. *Hasan*, 254 F.3d at 1154 n.3 ("Time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance.") (citation omitted). Here, Petitioner's May 17, 2018 knowledge that his sentence was reduced, and that an amended abstract of judgment entered, was sufficient to trigger his due diligence and start the clock ticking on his statute of limitations. He did not file a state habeas petition until almost 17 months later, on October 8, 2019.

Even if the Court accepted Petitioner's point of view that the statute of limitations clock did not start ticking until January 30, 2019, when he received the documentation that caused him to realize the April 25, 2018 resentencing hearing occurred and that appointed counsel was present, it would not change the result here for two reasons. First, commencing the statute of limitations on January 30, 2019, would not change the state's dismissal of Petitioner's habeas petition as untimely. The state's dismissal of the petition as untimely precludes application of statutory tolling while that case was ongoing with the state from October 8, 2019 to March 30, 2021. *See infra* at 16-18.

Second, even assuming the federal clock was tolled until completion of the state habeas proceedings on March 30, 2021, Petitioner still did not file his federal habeas petition until June 28, 2022 – 90 days beyond the one-year limitations period. While brief portions of that time are subject to equitable tolling, it is not nearly enough to render his federal petition timely. *See infra* at 18-29.

Before addressing Petitioner's equitable tolling arguments, the Court first explains why statutory tolling cannot apply.

**B.   Statutory Tolling Does Not Apply to Petitions that are Untimely Under State Law**

The AEDPA includes a statutory tolling provision which suspends the statute of limitations period for the time during which a "properly filed" application for post-conviction or other collateral review is "pending" in state court.  28 U.S.C. § 2244(d)(2); *Pace*, 544 U.S. at 410.  When it applies, the "AEDPA's statutory tolling provision applies to 'all of the time during which a state prisoner is attempting, through proper use of state court procedures, to exhaust state court remedies with regard to a particular post-conviction application.'" *Sasser v. Koenig*, No. CV 21-1396 JGB (PVC), 2021 WL 3111850, at *4 (C.D. Cal. July 22, 2021) (quoting *Harris v. Carter*, 515 F.3d 1051, 1053 n.3 (9th Cir. 2008)).

 "Applying these principles to California's post-conviction procedure . . . the statute of limitations is tolled from the time the first state habeas petition is filed until the California Supreme Court rejects the petitioner's final collateral challenge." *Harris*, 515 F.3d at 1053 n.3; *see also Carey v. Saffold*, 536 U.S. 214, 217–23 (2002) (under California's "original writ" system, an application for state collateral review is "pending" in the state courts so as to toll the federal statute of limitations during the interval between a lower court's decision and the filing of a further original state habeas petition in a higher court).  Here, if it applied, the statute of limitations would be tolled from October 8, 2019 to March 30, 2021.

There is no statutory tolling for a state court petition that is filed after the one-year federal limitations period has expired. *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed"); *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001) (filing a state

16

1   habeas petition after the AEDPA statute of limitations expired "resulted in
2   an absolute time bar" to refiling after state claims are exhausted).

3       Moreover, a petition rejected by the state court as untimely is not
4   considered "properly filed" and does not toll the limitations period. *Trigueros*
5   *v. Adams*, 658 F.3d 983, 988 (9th Cir. 2011); *Pace*, 544 U.S. at 413-14 ("When
6   a postconviction petition is untimely under state law, 'that is the end of the
7   matter' for purposes of § 2244(d)(2).").  In *Bonner v. Carey*, 425 F.3d 1145 (9th
8   Cir. 2005), *amended*, 439 F.3d 993 (9th Cir.), the Ninth Circuit held that a
9   state petition which is ultimately dismissed by California courts as untimely
10  was neither "properly filed" nor "pending" during the time it was under
11  consideration by the state courts. *Bonner*, 425 F.3d at 1149 (concluding that
12  under *Pace*, "if the petition was untimely under California law, it was never
13  properly filed," and rejecting the proposition that statutory tolling is
14  available when the state court denies a post-conviction petition both on the
15  merits and as untimely), *as amended*, 439 F.3d 993 (citing *Saffold*, 536 U.S.
16  at 225-26).

17      Petitioner argues that statutory tolling applies from the time he filed
18  his state petition on October 8, 2019 to the date of his final adjudication by
19  the California Supreme Court on March 30, 2021.  (ECF No. 16 at 5-6).
20  There are two problems with that position:  (1) the October 8, 2019 petition
21  was filed more than a year after the federal statute of limitations period
22  commenced on May 17, 2018; and (2) the state superior court and appellate
23  court both held that Davis's state petition was untimely under state law.
24  (ECF No. 8-2 at 4-5 [superior court's 12/2/2019 untimeliness finding]; ECF
25  No. 8-4 at 3 [appellate court's 6/3/2020 untimeliness finding]).  *See generally*
26  *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (recognizing that
27  Idaho state habeas petition filed after the limitations period expired does not

toll or revive the expired limitations period); *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001) (filing a state habeas petition after the federal statute of limitations had expired "resulted in an absolute time bar").

Even if the statute of limitations did not commence until January 30, 2019 as Petitioner argues, and the October 8, 2019 habeas petition could be deemed filed within the requisite one-year federal limitations period, statutory tolling still could not apply because the state courts found the petition untimely. That was the end of the matter. *Pace*, 544 U.S. at 414.

More importantly, however, even if Petitioner could qualify for statutory tolling despite the state court's untimeliness findings, the clock would have been tolled from only October 8, 2019 to March 30, 2021. Because this federal Petition was not filed until 15 months later, on June 28, 2022, it is *still* untimely, unless equitable tolling can apply.

## C. **Equitable Tolling Applies, In Part, As a Result of Petitioner's Illness and Pandemic Delays, But Not As a Result of Attorney Miscalculations or State Misconduct**

Equitable tolling is appropriate when a petitioner can show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quotation omitted); *Pace*, 544 U.S. at 418. Both elements must be met. *Id.*

"The petitioner must show that 'the extraordinary circumstances were the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a petition on time.'" *Porter v. Ollison*, 620 F.3d 952, 959 (9th Cir. 2010) (quoting *Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009)). "[T]he threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." *Miranda v. Castro,* 292 F.3d

1063, 1066 (9th Cir. 2002) (quotation and citation omitted).  This high standard exists to effectuate "AEDPA's statutory purpose of encouraging prompt filings in federal court in order to protect the federal system from being forced to hear stale claims."  *Guillory v. Roe,* 329 F.3d 1015, 1018 (9th Cir. 2003) (quotation and citation omitted).

"To apply the doctrine in extraordinary circumstances necessarily suggests the doctrine's rarity, and the requirement that extraordinary circumstances stood in [petitioner's] way suggests that an external force must cause the untimeliness, rather than ... merely oversight, miscalculation or negligence on the petitioner's part, all of which would preclude the application of equitable tolling."  *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) (quotation and citation omitted); *accord Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999) ("equitable tolling is unavailable in most cases").

To demonstrate the first requirement for equitable tolling, diligence, the petitioner must show that "he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court."  *Smith v. Davis*, 953 F.3d 582, 598-99 (9th Cir. 2020) (en banc).  Here, the Court has already questioned Petitioner's diligence, but it will assume Davis acted diligently for purposes of the equitable tolling analysis because additional timeliness issues preclude his Petition regardless of this consideration.

The second equitable tolling requirement is a causation requirement.  *Id.*, 953 F.3d at 600.  A petitioner must establish not only the existence of an extraordinary circumstance but also that it was, in fact, the cause of the untimely filing of the federal habeas petition.  *See Spitsyn v. Moore*, 345 F.3d

796, 799 (9th Cir. 2003); *see also Bryant v. Arizona Att. Gen.*, 499 F.3d 1056, 1061 (9th Cir. 2007) (a petitioner must show that the claimed extraordinary circumstances were the cause of his untimeliness).  "[I]t is only when an extraordinary circumstance prevented a petitioner acting with reasonable diligence from making a timely filing that equitable tolling may be the proper remedy." *Davis*, 953 F.3d at 600.

### *Medical Issues*

Petitioner contends the statute of limitations should be tolled based on his serious medical issues, particularly because he blames the state and the prison system for his medical complications, which he is challenging through an independent civil rights action against CDCR. (*See* ECF No. 16 at 4-5, 13-14, Ex. 1 [excerpts from civil rights complaint]).  His separate civil rights action maintains, and the Court will assume as true for purposes of the current motion to dismiss, that despite the CDCR knowing that Petitioner had a congenital heart murmur that necessitated prophylactic antibiotics before dental care, prison medical staff failed to provide that medication, which led to serious health complications from September 2018 through June 2020.  (ECF No. 16 at 13-14).

Petitioner's medical problems began on September 10, 2018 when he complained about pain from an abscessed tooth.  (ECF No. 16 at 13).  The problem escalated when the Petitioner failed to receive proper medication. (*Id.*).  His condition worsened considerably until he was transferred outside of the prison system, where he received the first of two heart surgeries on February 10, 2019.  (*Id.* at 14).  He continued to be transferred among facilities for medical care, then underwent a second heart surgery, and was not returned to the regular prison population until early June 2020.  (*Id.* at 15).  During his season of medical treatment, Petitioner was limited in his

ability to receive timely information about his sentencing issue.  (ECF No. 16 at 5, 14-15).  The Court finds that two heart surgeries and multiple transfers to various medical facilities for care constitute extraordinary circumstances outside Petitioner's control that prevented him from taking important steps in this case.  Accordingly, a portion of that time warrants tolling.

Petitioner does not plead or articulate how his medical problems caused delays or complications once he retained counsel on March 30, 2019.  He also does not allege any misconduct by his state habeas counsel that would warrant additional equitable tolling.  Instead, he asks the Court to toll additional months beyond March 30, 2019 to coincide with time his attorney needed to investigate his case.  (ECF No. 16 at 7).

To support his medical tolling argument, Petitioner cites two capital habeas cases.  First, is *Kennedy v. Warden*, 2:13-cv-0204111 LKK KHN DP, 2014 WL 1513371, at *9 (E.D. Cal. April 16, 2014), where the court recommended equitable tolling in a death penalty case with respect to the 120-day period between petitioner's initial filing and his right to appointed counsel.  That case is readily distinguishable from the facts here because that was a death penalty case, and the petitioner was entitled to appointment of counsel, which is not so in this § 2254 petition.  *See Bonin v. Vasquez*, 999 F.2d 425, 429 (9th Cir. 1993) (no constitutional right to appointment of counsel in proceedings on a petition for writ of habeas corpus by a state prisoner pursuant to 28 U.S.C. § 2254).  Second, *Kennedy* was a "particularly complex" case because the state petition was voluminous, including nearly 600 pages, 90 separate claims and sub-claims, many claims of ineffective assistance of counsel for the guilt and penalty phases of trial; that petition also included claims that trial counsel acted under a conflict of interest, and "extensive state misconduct" in the investigation of the case.  *Id*. at *10.

Next, Petitioner relies on another capital case, *Brown v. Davis,* 482 F. Supp. 3d 1049 (E.D. Cal. Aug. 27, 2020), which is similarly distinguishable and unhelpful here.  There, after petitioner's 1996 state conviction and death sentence were affirmed on direct appeal, and his state habeas petition was denied in 2012 and 2019, he filed a pro se request for appointed counsel in 2019 and sought prospective equitable tolling based in part on the pandemic. *Id.*  That indigent capital habeas petitioner had post-conviction counsel who delayed the habeas petition for more than three months, and the appointment of new counsel took an additional six weeks.  *Id.*  The lack of appointed counsel was an extraordinary circumstance there "given the time passed since the crime, the complexity of issues, the voluminous record, the extensive required investigation, and petitioner's possible incompetency and mental health issues." *Brown*, 482 F. Supp. 3d at 1054.

Here, Petitioner has not shown a voluminous record, case complexity, or work to be done that rises to the extraordinary level required to apply equitable tolling for his counsel to investigate and research in this non-capital case.  Accordingly, regardless of Petitioner's medical issues, the Court recommends that tolling due to medical problems would cease, and the clock would start ticking again when the Petitioner retained Spolin Law P.C. as counsel on March 30, 2019.  Despite Petitioner's medical issues his counsel moved forward with the case, filing the state petition six months later. Delays from medical complications ceased to be extraordinary once Petitioner's counsel began acting on his behalf.

The Court recommends that equitable tolling apply from September 10, 2018 to March 30, 2019, because, despite his extraordinary medical conditions, Petitioner exhibited diligence by pursuing documentation from the CDCR in January 2019, retaining counsel in March 2019, and filing his

state habeas petition in October 2019.  Tolling should cease, however, once Petitioner obtained counsel on March 30, 2019.

As such, this Court finds that Petitioner's statute of limitations ran from the time it commenced on May 17, 2018 until his medical problems arose on September 10, 2018, which is **116 days**.  It was then tolled for medical problems from September 10, 2018 through March 30, 2019.  The statute of limitations clock then ran again from March 30, 2019 to at least the time Petitioner filed his state habeas writ on October 8, 2019, which is an additional **192 days**.  Whether or not statutory tolling would apply to Petitioner's claim (and the Court finds that it does not), Petitioner's statute of limitations clock had already run for **308 days** before he ever filed his state petition.

Petitioner next contends that equitable tolling should apply based on delays associated with the COVID-19 pandemic, which the Court agrees with to a very limited extent.

### *Pandemic Delays*

Extraordinary circumstances due to COVID-19 will only be found where a petitioner "sets forth 'fact-specific circumstances related to the pandemic that hindered his ability to timely file a habeas petition.'"  *Valles v. Allison*, 21-CV-819-GPC-WVG, 2022 WL 3327386, at *4–5 (S.D. Cal. Aug. 11, 2022) (citation omitted); *see Dones v. Allison*, No. 22CV282-MMA(BLM), 2022 WL 17979758, at *5 (S.D. Cal. Dec. 28, 2022) (refusing equitable tolling based on pandemic where petitioner did not explain how prison library was limited, the length of restrictions, how he attempted to access the law library or obtain legal research materials, how the lack of access to the library, phone calls, and standard mail impeded his ability to timely file his petition, or what systems were in place for obtaining legal materials such as a library

paging system, or whether he tried to utilize those systems, and if they were insufficient).

Petitioner argues that pandemic tolling should apply throughout the time he was represented by counsel, which would include the start of the pandemic in February 2020 through his filing of this Petition in June 2022. (ECF No. 16 at 6-8).  He again relies on the capital habeas case, *Brown v. Davis*, to support his position.  As stated earlier, that court addressed prospective equitable tolling in a death penalty case where the petitioner and counsel demonstrated continued diligence during the early phases of the pandemic, prospectively through June 1, 2021.  The *Brown* court explained that much of the time at issue included courthouse closures and the imposition of emergency rules that suspended the 70-day period required for bringing criminal defendants to trial.  *Brown*, 482 F. Supp. 3d at 1059-60.

Here, before the pandemic, Petitioner's statute of limitations clock had been ticking for 308 days.  Current counsel summarily states that she was "severely delayed by handicaps visited upon the institutions, counsel, and courts by the pandemic."  (ECF No. 16).  She offers only three fact-specific examples of delays experienced in 2022:  (1) an undefined delay in gaining gate clearance at the prison, dated March 18, 2022 (ECF No. 16 at 19); (2) a 30-day delay in scheduling a call between counsel and Petitioner from March 1, 2022 to March 30, 2022 (ECF No. 16 at 17); and (3) a two-week delay in confidential calls due to a COVID outbreak quarantine in November 2022 – five months after the federal petition was filed.  (*See* ECF No. 16 at 20).

"There is scant legal authority analyzing whether the COVID-19 pandemic constitutes an extraordinary circumstance that merits equitable tolling of habeas corpus claims."  *Valles*, 2022 WL 3327386, at *4–5; *see also Roberts v. Allison*, 22-cv-00251-LL-BGS, 2022 WL 4280657, at *8–9 (S.D. Cal.

Sept. 15, 2022).  To date, courts within the Ninth Circuit have concluded that "[t]he COVID-19 pandemic, in itself, 'does not automatically warrant equitable tolling for any petitioner who seeks it on that basis.'" *Cervantes v. Cisneros*, 2:22-cv-00367-SSS-MAA, 2022 WL 4082488, at *5 (C.D. Cal. July 28, 2022) (quotations and citations omitted).

Some courts have found that restrictions related to COVID-19 can constitute an "extraordinary circumstance" warranting some limited amount of equitable tolling.  *See, e.g., Carter v. United States*, No. 20-1654 MJP, 2021 WL 1978697, at *4 (W.D. Wash. May 18, 2021) (finding that circumstances presented by COVID-19 restrictions prevented petitioner from filing petition one month earlier); *McWhorter v. Davis*, No. 20-0215 NONE, 2021 WL 5639209, at *4 (E.D. Cal. Dec. 1, 2021) (finding that equitable tolling was warranted because the "petitioner has demonstrated that notwithstanding counsel's ongoing reasonable diligence, exceptional circumstances raised by the ongoing COVID-19 pandemic continue to impede the investigation, development, and presentation of a complete federal habeas petition").

The Court recognizes that the pandemic has made communication and legal work more difficult for everyone, but conclusory statements about delays and difficulties will not toll the statute of limitations.  *See Valles*, 2022 WL 3327386, at *4–5 ("general 'claims of prison lockdowns and lack of access to the prison law library as a result of the COVID-19 pandemic alone are insufficient to amount to extraordinary circumstances' for equitable tolling purposes.'") (quoting *Dragasits v. Covello*, No. 3:21-cv-1459-CAB-MDD, 2022 WL 207730, at *7 (S.D. Cal. Jan. 24, 2022) (citing *Shephard v. Asuncion*, CV 21-4147-JWH(E), 2021 WL 6496744, at *10 (C.D. Cal. Nov. 3, 2021) (finding petitioner was not entitled to equitable tolling during alleged "total lockdown" due to COVID-19 between March 2020 and August 2020) and

*Sholes v. Cates*, 1:21-cv-01006-DAD-HBK, 2021 WL 5567381, at *4 (E.D. Cal. Nov. 29, 2021) (concluding prisoner not entitled to equitable tolling during COVID outbreak which caused the law library to be closed "for months" and thereafter open with only limited access)).

At best, Petitioner attributes six weeks to pandemic delays, but two of those weeks occurred after the federal petition was already filed and thus do not qualify for tolling here.  To the extent Petitioner asks the Court to apply a general unlimited period of tolling during the pandemic and post-pandemic proceedings, the Court declines to do so.  The Court does find, and will recommend, that equitable tolling should apply as a result of pandemic delays from March 1, 2022 to March 30, 2022, as supported by evidence of the communication delays Petitioner submits.  (ECF No. 16 at 16-20).  That limited tolling does little to resolve Petitioner's timeliness problem because the limitations period had already run for 308 days prior to this tolling.

Petitioner cannot overcome the statute of limitations problem here, even if the clock did not start ticking until completion of the state habeas petition.  Setting aside and excluding any time before the state petition was filed on October 8, 2019, and the time the state petition was pending through March 30, 2021, the Petition must still be dismissed as untimely.

Assuming the statute of limitations did not start running until March 30, 2021 (when the state habeas litigation concluded), it still ran for 11 months before March 1, 2022, when the pandemic tolling of 30 days would occur.  Applying 30-days of tolling for pandemic delays, the clock started ticking again on April 1, 2022, and ran to the date of filing here, June 28, 2022, another 86 days, and well beyond the one-year statute of limitations required by the AEDPA.  Equitable tolling does not render the Petition timely.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

### *Counsel's Inaccurate Calculations*

Petitioner's next argument for equitable tolling is his present counsel's error in miscalculating the habeas filing deadline.  (ECF No. 16 at 8-10).  He attaches Ms. Allen's declaration, wherein she explains that she mistakenly advised Davis that his deadline for filing would run one year and 90 days from the denial of relief from the California Supreme Court (the time applicable to file a writ of certiorari with the United States Supreme Court in a capital case).  (ECF No. 16 at 22).  She asserts that the Petitioner diligently sought a timely petition throughout the duration of her representation. (*Id*.).

The Petitioner relies on *Bottomley v. Tilton*, No. 07-cv-1973 W (NLS), 2008 U.S. Dist. LEXIS 114563 (S.D. Cal. July 7, 2008) to support his position. His reliance there is misplaced, however, as that case expressly acknowledges that an attorney's "miscalculation of the limitations period . . . in general [does] not constitute extraordinary circumstances sufficient to warrant equitable tolling."  *Id*. at \*5 (citing *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001); *Miranda v. Castro*, 292 F.3d 1063, 1066-68 (9th Cir. 2001) (reiterating *Frye's* holding that counsel's miscalculation and negligence in general do not constitute "extraordinary circumstances" sufficient to warrant equitable relief)).

An attorney's failure to advise a petitioner about post-conviction limitations deadlines does not constitute extraordinary circumstances warranting equitable tolling.  *See Lawrence v. Florida*, 549 U.S. 327, 335-36 (2007).  Such miscalculation is simply not sufficient to warrant tolling in the post-conviction context where prisoners have no constitutional right to counsel.  *Id*.

### *State Misconduct*

Petitioner's final argument for equitable tolling applies to the period of

time before he filed the state habeas petition, when he contends the state's misconduct delayed his case; he labels that period of time as April 25, 2018 to March 2020.  (ECF No. 16 at 2-3).  He argues the state should have informed him of the pendency of his resentencing hearing and taken steps to assure he was present.  (ECF No. 16 at 3).  Petitioner also claims CDCR should have presented documents from his resentencing hearing to him prior to January 30, 2019.  (ECF No. 16 at 2-3).

Petitioner cites two cases to support this position.  First, he cites *Scott v. Doucart*, 17-cv-01290, 2018 U.S. Dist. LEXIS 98720, at * 19-20 (N.D. Cal. 2018); second is *Barth v. Beard*, CV 16-01469-DMG (RAP), 2018 U.S. Dist. LEXIS 221775, at 9 (C.D. Cal. June 25, 2018).  (ECF No. 16 at 4).  The *Scott* court simply ordered briefing to determine whether an inmate's placement in administrative segregation, or the prison's failure to deliver his property to him, sufficiently alleged a constitutional violation.  *Scott*, 2018 U.S. Dist. LEXIS 98720, at *20-21  In that habeas challenge, the petitioner had not shown that his lack of access to legal documents caused any untimely filings.  *Id.* at *22.  Next, in *Barth*, the court dismissed plaintiff's § 1983 civil rights claim based on generalized allegations that correctional officers denied his access to the law library, seized legal documents, and obstructed plaintiff's ability to meet deadlines, send documents, and obtain legal services.  *Barth*, 2018 U.S. Dist. LEXIS 221775, at *4-5.

Neither of those cases advance Petitioner's argument that the CDCR engaged in misconduct that warrants tolling the statute of limitations.  Such equitable tolling only applies when a petitioner is prevented from asserting a claim as a result of the state's wrongful conduct.  *See Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999).  Here, Petitioner concedes that all he had to do was request documentation from the CDCR.  Once he did so on January

13, 2019, the state responded promptly. Nothing changed from May 17, 2018 when Petitioner learned of his sentence reduction to January 13, 2019 when he requested documentation. His failure to obtain those documents earlier does not equate to misconduct by the state. The CDCR first alerted Davis to the nature of the suspected error in sentencing when it discovered the issue in January 2018. Once the state corrected the error in his favor, it notified Petitioner by May 17, 2018 that his sentence was reduced, how much it was reduced, why it was reduced, and that an amended abstract of judgment existed. Petitioner presents no facts or law to suggest the CDCR's conduct warrants tolling.

More importantly, as repeatedly explained, even if there were grounds for equitable tolling for state misconduct that extended all the way through March 2020 or March 30, 2021 as Petitioner contends, Petitioner's delays still extend far beyond any such alleged misconduct.

## V.   **CONCLUSION**

For the foregoing reasons, the Court respectfully **RECOMMENDS** Respondent's Motion to Dismiss be **GRANTED**.

This Report and Recommendation is submitted to the United States District Judge assigned to this case. Any party may file written objections with the Court and serve a copy on all parties on or before **March 3, 2023**. The document should be captioned "Objections to Report and Recommendation." Any reply to the Objections shall be served and filed on or before **March 17, 2023**. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's Order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

1    **IT IS SO ORDERED**.

2    Dated:   February 17, 2023

3                                                    _____

4                                                    Hon. Mitchell D. Dembin
                                                     United States Magistrate Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27